FILED IN OPEN COURT
DATE: 5-14-2012
Susan Moody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARS & ROSHNI CORPORATION | Criminal No. 3:11CR18 |

### DEFERRED PROSECUTION AGREEMENT

COME NOW the United States Attorney's Office for the Western District of Virginia ("the Government") and the Defendant, Mars & Roshni Corporation ("M&R"), by and through the designated representative empowered by its shareholders, and enter into this Deferred Prosecution Agreement ("the Agreement"). The terms and conditions of this Agreement are as follows:

1. M&R has been indicted in the Western District of Virginia for one count of conspiring to traffic in contraband cigarettes in violation of 18 U.S.C. §§ 371 and 2242, one count of failing to keep cigarette-sales records in violation of 18 U.S.C. §§ 371 and 2243, and six counts of trafficking in contraband cigarettes in violation of 18 U.S.C. § 2242. M&R waives all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution and 18 U.S.C. § 3161 and also waives any objection to venue for these charges in the Western District of Virginia.

2. M&R admits, accepts, and acknowledges that it is responsible for the acts of its officers and employees as set forth in the indictment and the Statement of Facts attached as Attachment A. Should the Government pursue the prosecutions deferred by this Agreement, M&R agrees that in any such proceeding it will neither contest the admissibility of the Statement of Facts nor contradict the facts it contains.

3. M&R agrees to use its best efforts to sell all of its assets ("M&R Assets") at fair market value within the time period set forth in this Agreement and on terms agreeable to the Government and M&R. Upon the sale of all of M&R Assets, M&R agrees that sixty two and one half percent (62.5%) of the net proceeds from the sale of M&R Assets shall be forfeited to the Government. Of this 62.5%, it is understood that 50% is paid as the result of M&R's direct obligations, and the remaining 12.5% is paid because of the forfeiture by Vijay Patel to the Government of his one quarter interest in M&R that was titled in name to his wife, Rita Patel. The United States agrees that the remaining thirty seven and one half percent (37.5%) of the net proceeds from the sale of M&R Assets shall be and remain the property of Mars & Roshni Inc., to which the United States relinquishes any claim, for distribution upon the dissolution of M&R and in accordance with Virginia law. In the event that M&R fails to sell

1

all of its assets within five years from the date of this agreement, in addition to the other remedies provided herein, M&R agrees that all remaining assets are forfeitable pursuant to the plea agreement entered into by Vijay Patel in accordance with the Agreed Order of Forfeiture attached as Attachment B to this Agreement. M&R agrees to sign Attachment B now, but the United States agrees not to tender Exhibit B to the Court for entry as an order unless and until M&R Assets have not been sold at the end of five years from the entry of this Agreement.

4. M&R agrees to cooperate fully in the forfeiture of Vijay Patel's assets ("Patel's Assets") to be forfeited pursuant to the plea agreement entered into by Vijay Patel. If applicable, M&R agrees to withdraw any existing claims and/or agrees not to file any claims in any criminal or civil forfeiture proceeding relating to the forfeiture of Patel's Assets.. M&R agrees to execute all documents, stipulations, consent judgments, agreed orders, court orders, bills of sale, deeds, affidavits of title, and the like, which are reasonably necessary to pass clear title to the United States or otherwise effectuate forfeiture of Patel's Assets. Notwithstanding the foregoing, M&R does not hereby purport to become a guarantor for any debts Vijay Patel may have, to release any claims against or contracts it or anyone else may have with Vijay Patel, or to release Vijay Patel himself from any guarantees he made to secure the debts of M&R. Representatives of M&R agree to fully cooperate and testify truthfully on behalf of the United States in any legal action necessary to perfect the United States' interest, including but not limited to any ancillary hearing in this criminal action or in any civil litigation.

5. M&R agrees that no tax deduction will be sought in connection with the forfeiture of M&R Assets. This amount is a final payment and shall not be refunded (a) if the Government moves to dismiss the indictment pursuant to this Agreement; or (b) should the Government later determine that M&R has breached this Agreement and brings a prosecution against M&R, unless M&R is subsequently adjudged not guilty. Further, nothing in this Agreement shall be deemed an agreement by the Government that this amount is the maximum criminal fine or forfeiture that may be imposed upon conviction in any such prosecution, and the Government shall not be precluded in such a prosecution from arguing that the Court should impose a higher fine or forfeiture. The Government agrees, however, that in the event of a subsequent breach, prosecution and conviction, it will recommend to the Court that the amount paid pursuant to this Agreement should be offset against whatever fine or forfeiture the Court imposes as part of its judgment.

6. The Government enters into this Agreement because M&R has cooperated with the Government since its indictment, has agreed to take remedial measures to ensure that M&R and its employees obey all laws, and continues to cooperate with the Government.

7. This Agreement shall be in effect for five years. During the five-year term of the Agreement, M&R agrees:

    a. To abide by the laws of the United States, the Commonwealth of Virginia, and any other state or local government;

   b. To cooperate fully with the Government; the Virginia Office of the Attorney General; the Bureau of Alcohol, Tobacco, Firearms, and Explosives; and any other authority or agency – domestic or foreign – that the Government designates in any investigation of M&R, its employees, or anyone else involved with M&R in criminal activity, including purchasers of contraband cigarettes;

   c. To waive its rights regarding search and seizure pursuant to the Fourth Amendment to the Constitution of the United States, including its rights to financial privacy in its financial documents and business bank accounts, access to which it will grant to the Government, the Virginia Attorney General's Office, and any other entity that the Government designates;

   d. Not to employ Vijay N. Patel in any capacity; and

   e. Not to knowingly sell to any individual more than five cartons of cigarettes in any 24-hour period.

8. M&R agrees that promptly after disbursing the net proceeds of M&R Assets as described in Paragraph 3 that it will cease all corporate operations, wind up its remaining obligations in accordance with Virginia law, and give notice to the Virginia State Corporation Commission to dissolve M&R. Should M&R notify the Government of the satisfaction of these conditions prior to the expiration of the deferred-prosecution period, the Government will move promptly to dismiss the indictment as to M&R with prejudice and shall not thereafter attempt to prosecute M&R for any crimes which were alleged or could have been alleged in the indictment.

9. If M&R at any time during the five-year term of this Agreement commits any federal crimes subsequent to the date of this Agreement; provides deliberately false, incomplete, or misleading information under this Agreement; or otherwise breaches the Agreement, M&R shall, in the sole discretion of the Government, thereafter be subject to prosecution for any federal criminal violation of which the Government has knowledge. Any such prosecutions may be premised on information provided by M&R. Moreover, M&R agrees that any such prosecution that is not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced against M&R in accordance with this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the termination of this Agreement. By this Agreement, M&R expressly intends to and does waive any rights with respect to the statute of limitations discussed herein.

10. It is further agreed that in the event M&R breaches this Agreement: (a) all statements made by or on behalf of M&R to the Government or to the Court, including the attached Statement of Facts shall be admissible in evidence in any and all criminal proceedings brought by the Government against M&R; and (b) M&R shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of M&R

prior or subsequent to this Agreement, or any leads derived from them, should be suppressed.

11. M&R acknowledges that the Department has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if M&R breaches this Agreement and this matter proceeds to judgment. M&R further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of its discretion.

12. M&R agrees that any sale, merger, or transfer of all or substantially all of its business assets as they exist during the term of this Agreement, whether such sale is structured as a stock or asset sale, merger, or transfer, shall be subject to the oversight and approval of the Government. Any such action shall also include in any contract for sale, merger, or transfer a provision binding the purchaser or any successor in interest thereto to the obligations described in this Agreement unless the Government, in its sole discretion, waives this requirement.

13. M&R expressly agrees that it shall not, through present or future attorneys, directors, officers, or any other person authorized to speak for M&R, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by M&R set forth above or in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights below by M&R, constitute a breach of this Agreement, and M&R thereafter shall be subject to prosecution as set forth in this Agreement. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall so notify M&R, and M&R may avoid a breach of this Agreement by publicly repudiating such statement(s) within two (2) business days after notification. Consistent with the obligations of M&R set forth above, M&R shall be permitted to raise defenses and to assert affirmative claims in civil and regulatory proceedings – other than a civil forfeiture proceeding – relating to the matters set forth in the Statement of Facts.

14. It is understood that this Agreement is binding on M&R, the Government, and the Commonwealth's Attorney's Office for Spotsylvania County. This Agreement does not bind any other federal agencies or any state or local law enforcement or regulatory agencies, although the Government will bring the cooperation of M&R and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if M&R so requests.

15. This Agreement sets forth all the terms of the Deferred Prosecution Agreement – other than the terms of oversight and terms of sale of the assets of M&R – between M&R and the Government. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for M&R, and a duly authorized representative of M&R.

**AGREED:**

FOR MARS & ROSHNI CORPORATION:

_____
CHANDRAVADAN PATEL
President, Mars & Roshni Corporation

_____
JOHN E. DAVIDSON, ESQ.
Counsel for Mars & Roshni Corporation

FOR THE UNITED STATES ATTORNEY'S OFFICE:

TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY

_____
RONALD M. HUBER
ASSISTANT UNITED STATES ATTORNEY

_____
RAMIN FATEHI
SPECIAL ASSISTANT UNITED STATES ATTORNEY

FILED THIS \_\_\_\_ DAY OF MARCH, 2012.

## OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with counsel for Mars & Roshni Corporation ("M&R"). I understand the terms of this Agreement and voluntarily agree, on behalf of M&R, to each of its terms. Before signing this Agreement, I consulted with the attorney for M&R. The attorney fully advised me of M&R's rights, of its possible defenses, of the applicable United States Sentencing Guidelines, and of the consequences of entering into this Agreement. I have carefully reviewed this Agreement with the other shareholders of M&R, and by a [ majority / unanimous ] vote the shareholders of M&R have agreed to enter into this agreement. As evidence of this vote, I enclose a Corporate Resolution authorizing me to enter into this Agreement.

The United States Attorney's Office for the Western District of Virginia has made M&R no promises or inducements other than those in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of M&R, in any way to enter into this Agreement. I am also satisfied with the performance of M&R's attorney in relation to this matter.

I certify that I am an officer of M&R and that I have been duly authorized by M&R to execute this Agreement on behalf of M&R

Date: ~~March~~ MAY 10, 2012.

By: _____
Chandravadan Patel
President
Mars & Roshni Corporation

## Corporate Resolution of the Mars and Roshni Corporation

We are the shareholders of the Mars and Roshni Corporation ("the Corporation"), which currently is a defendant in the United States District Court for the Western District of Virginia in *United States v. Vijay Patel, et al.*, 3:11cr18. We hereby affirm the following this 16th day of March, 2012:

1. That Chandravadan N. Patel ("Bob Patel") is an officer of the corporation and was the vice-president of the corporation up until the commencement of *United States v. Vijay Patel, et al.*
2. That Vijay Patel is no longer the president of the corporation and that Bob Patel succeed Vijay Patel as the president of the corporation shortly after the commence of *United States v. Vijay Patel, et al.*
3. That we have previously given Bob Patel the authority to make decisions and take actions for the corporation in *United States v. Vijay Patel*. This includes but is not limited to the authority to:
    a. Give instructions to and pay legal fees of the corporation's counsel in this matter, John E. Davidson, Esq. of Davidson & Kitzmann, PLC;
    b. Negotiate with the government to resolve the corporation's involvement in *United States v. Vijay Patel, et al.*,
    c. Enter pleas of guilty or not guilty and resolve and enter into agreements with the government regarding fines, restitution, forfeiture and related matters.
4. We have reviewed the Deferred Prosecution Agreement and Attachment A-Statement of Facts (collectively, the "Agreement"). We understand that Bob Patel has authorized Mr. Davidson to negotiate the Agreement on the terms stated therein. We hereby **RATIFY** Mr. Patel's authorization and **RESOLVE** that the Mars and Roshni Corporation hereby (a) **AGREES** to enter into the Agreement, and (b) directs Bob Patel and John E. Davidson, Esq., to sign all appropriate documents to effect this resolution.

[signature]
Print name: Jyotibhai N Patel

[signature] for Prafulla B. Pen PA
Print name: Prafulla B. Pen

[signature]
Print name: Ratna N. Patel

[signature]
Print name: Prabhuchi C Patel

7

## ATTACHMENT A – STATEMENT OF FACTS

This Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement signed ~~March~~ May 14, 2012 between the United States Attorney's Office for the Western District of Virginia ("the Government") and Mars & Roshni Corporation ("M&R") (EIN: 54-1511825). M&R agrees that the United States had sufficient evidence to prove the following facts beyond a reasonable doubt had this case gone to trial:

M&R is a Virginia corporation headquartered in Fredericksburg, Virginia. Jyoti Patel, Prafulla Patel, Prabhavati Patel, and Rita Patel each own 25% of the stock of M&R. Rita Patel is the straw owner of her share of stock on behalf of her husband Vijay Nanubhai Patel ("Patel"). During the period relevant to the indictment and Deferred Prosecution Agreement and until the institution of the instant case against M&R, Patel was the president of M&R. Pulin P. Amin ("Amin") and Divyeshkumar Desai ("Desai") were employees of M&R, worked under Patel's direction, and reported to Patel.

M&R and its shareholders allowed Patel to be president of M&R and to manage the C&J Citgo knowing that Patel was a convicted felon and had served a prison sentence for trafficking in contraband cigarettes in violation of 18 U.S.C. § 2241.

M&R owns and operates two gasoline stations in the Eastern Judicial District of Virginia: C&J Citgo at 5313 Jefferson Davis Highway, Spotsylvania, Virginia, and a BP gas station at 10941 Catharpin Road, Spotsylvania, Virginia. M&R also owns a house at 11011 Catharpin Road, Spotsylvania, Virginia.

In addition to being president of M&R, Patel was the day-to-day manager of C&J Citgo, which was in the business of selling gasoline, convenience items, food, and cigarettes. M&R's customers included a regular group of cigarette traffickers who traveled from out of state to purchase cigarettes for resale in jurisdictions charging a higher cigarette tax, such as New York and Pennsylvania.

Prior to 2009 C&J Citgo generated approximately $6,000,000 in gross annual revenues, but by late 2009 M&R and some of the other businesses Patel managed were in financial trouble. In the past the regular cigarette traffickers had told Patel and other employees of M&R that they were interested in buying more than 49 cartons of cigarettes, but Patel, mindful that it was against federal law to sell 10,000 cigarettes (50 cartons) or more to any individual who transports those cigarettes out of the Commonwealth of Virginia and mindful of instructions given to him by other shareholders of M&R not to violate this federal law, had instructed the employees of M&R and C&J Citgo not to sell more than 49 cartons of cigarettes to any single purchaser.

Faced with a tightening financial situation, in mid- to late-2009 Patel, as President of M&R, began to direct Amin and other employees of M&R and C&J Citgo to sell over 50 cartons of cigarettes to the traffickers willing to buy them. From that point through March of 2011 M&R made daily sales of contraband cigarettes to a number of buyers from high-cigarette-tax states,

including Amadou Diallo ("Diallo") from the Bronx, New York, in violation of 18 U.S.C. § 2342. Since M&R, Patel, and Patel's subordinates knew that these transactions were illegal, they all failed to maintain any records of those sales as required under 18 U.S.C. § 2343.

Patel, Amin, and, after his hiring in November of 2010, Desai – and through their actions M&R – conspired with each other and the cigarette traffickers in the following scheme to sell contraband cigarettes, profiting both from the sale of cigarettes themselves and also from certain cigarette manufacturer rebate programs:

- M&R, through Patel, would order cigarettes from various legitimate wholesalers in the Eastern and Western Judicial Districts of Virginia and store those cigarettes in the back room of C&J Citgo. Patel, through M&R, would pay for those cigarettes using M&R's credit cards. Patel would purchase the approximate amount of cigarettes he anticipated his trafficking customers would want to buy.

- Individual cigarette traffickers would arrive at C&J Citgo and purchase several hundred cartons of cigarettes at a time, paying M&R tens of thousands of dollars in cash per transaction. Patel, Amin, and Desai would put together the trafficker's purchases in the storage room at C&J Citgo help the traffickers bag and load the cigarettes in their vehicles for transport out of state.

- At the direction of Patel, M&R employees, including Amin and Desai, would disguise the illegal sale as a series of legal ones by ringing the sale through the C&J Citgo cash registers as a large number of smaller transactions, usually under five cartons each. Those sub-five-carton transactions would qualify the sales for the manufacturer's rebates.

- Once the money was worked into the C&J Citgo sales records, M&R employees would deposit the cash into M&R's business account at Carter Bank & Trust, breaking the cash into smaller transactions to make the cash-flow appear more constant than it was. M&R employees, including Patel, would deposit the rebate checks from the various cigarette manufacturers into the same account.

- M&R and Patel would use the Carter Bank & Trust account to pay down the credit card and then purchase the next round of cigarettes.

Through Patel and subordinates following his instructions, M&R counted between eight and ten cigarette traffickers as its main customers, including Diallo. Diallo was so regular a customer that he gave Amin a pre-paid telephone so that Diallo could telephone Amin and arrange his purchases in advance. M&R, Patel, Amin, and Desai knew that Diallo was taking his cigarettes to New York City, where the tax per carton of cigarettes in 2010 was approximately $70.00 more than in Virginia. M&R, Patel, Amin, and Desai were also aware that their second main customer was illegally transporting cigarettes to the Commonwealth of Pennsylvania, whose taxes per carton were $13.00 higher than those in Virginia.

As this contraband-cigarette scheme expanded in scope, word reached the Financial Crime

Intelligence Center at the Virginia Office of the Attorney General ("VAAG"), who along with the Bureau of Alcohol, Tobacco, Firearms, and Explosives at the United States Department of Justice ("ATF") began to investigate M&R and its employees.

VAAG infiltrated the scheme at C&J Citgo, conducted surveillance at the property, and tracked the illegal transporters. From July, 2010 through April, 2011 VAAG and other law-enforcement agencies arrested over ten illegal transporters who had left C&J Citgo and crossed the Virginia border with contraband cigarettes.

Thanks to this large-scale conspiracy, deposits into M&R's bank account from all sources of income in 2010 exceeded $13,000,000, over $10,000,000 alone from cigarettes. In the summer and fall of 2010, M&R took in between $80,000 and $100,000 a day in proceeds from selling contraband cigarettes. In recorded conversations Patel expressed that M&R and its employees were compelled to traffic in contraband cigarettes, because "the company," i.e. M&R, would have been insolvent without the proceeds from the contraband-cigarette sales. Patel, Amin, and Desai have admitted that the goal of the conspiracy, either in part or in large part, was to keep M&R afloat.

While the profit margin on each carton of cigarettes was relatively small, M&R and Patel profited appreciably due to the sheer volume of cigarettes M&R was selling. M&R went from purchasing approximately 132,000 cartons of cigarettes in 2009, when it began to sell cigarettes illegally, to over 271,000 cartons in 2010.

M&R insiders conservatively estimated that 75% of the sales in 2010 alone – over 200,000 cartons, representing gross sales of approximately $8,670,000 – were to contraband cigarette traffickers. At a profit margin between $1.50 and $2.50 per carton, M&R made between $300,000 and $500,000 in profits on illegal cigarette sales alone, and in addition M&R received $452,723.84 in manufacturer's rebates in 2010.

By the spring of 2011 Patel had noticed a drop in contraband-cigarette sales and suspected that it was due to the traffickers' being arrested. Certain traffickers, including Amadou Diallo, even telephoned Patel and told him that he was under investigation. At the same time Patel was searching for cheaper sources of cigarettes to sell to the traffickers. A VAAG confidential source introduced Amin to a Spotsylvania County Sheriff's detective posing as a North Carolinian with access to stolen cigarettes, both those bearing tax stamps and those without them.

Amin and Desai, with Patel's knowledge and at his direction, bought nearly $475,000 in cigarettes from the undercover detective between March 1, 2011 and April 21, 2011, first at a storage facility in Spotsylvania County and then from March 29, 2011 at a storage facility in neighboring Orange County, Virginia. Patel and M&R employees following his instructions resold nearly all of those cigarettes to Diallo, with the remainder going into the stock at C&J Citgo. When Amin and Desai told Patel that they were buying untaxed cigarettes (which are contraband *per se*), Patel cautioned them that untaxed cigarettes were dangerous.

On July 14, 2011, VAAG and ATF executed a search warrant at C&J Citgo and arrested Patel, Amin, and Desai. All three men admitted to their involvement in the cigarette-trafficking conspiracy.

Based on the volume of cigarettes Patel, M&R, and M&R's employees sold between June 11, 2010 and April 21, 2011 alone, M&R and the cigarette traffickers with whom it conspired caused a tax loss to the Commonwealth of Pennsylvania of $472,384 and to the City and State of New York of approximately $4,350,492.50. The sale to Diallo and his associates of untaxed cigarettes also caused a tax loss to the Commonwealth of Virginia of $96,570.00, and the Maryland cigarette seizures showed a Maryland tax loss of $171,460. The total tax loss to all jurisdictions in this case is $5,090,906.50.

M&R acknowledges that the Government had sufficient evidence to prove these facts at trial beyond a reasonable doubt. M&R further acknowledges that the Government had sufficient evidence to prove beyond a reasonable doubt each of the allegations in the indictment as to M&R. M&R further acknowledges that despite Patel's and other employees acting without corporate approval, M&R is responsible for these acts, which Patel as its President and Amin and Desai as its employees, undertook. M&R finally acknowledges that these facts would establish its guilt beyond a reasonable doubt as to all charges.

**SO STIPULATED:**

FOR MARS & ROSHNI CORPORATION:

_____
CHANDRAVADAN PATEL
President, Mars & Roshni Corporation

_____
JOHN E. DAVIDSON, ESQ.
Counsel for Mars & Roshni Corporation

FOR THE UNITED STATES ATTORNEY'S OFFICE:

TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY

_____
RONALD M. HUBER
ASSISTANT UNITED STATES ATTORNEY

_____
RAMIN FATEHI
SPECIAL ASSISTANT UNITED STATES ATTORNEY

FILED THIS ____ DAY OF MARCH, 2012.